41 C.C.P.A.(Patents)

**Application of BRIGHT.**

**Patent Appeals No. 5996.**

United States Court of Customs and Patent Appeals.

Nov. 24, 1953.

Dos T. Hatfield, Washington, D. C. (Rowland V. Patrick and H. L. Kirkpatrick, Boston, Mass., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

GARRETT, Chief Judge.

Appellant here seeks review and reversal of the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all the claims, three in number, of appellant's application for patent, serial No. 45,903, filed August 24, 1948, for "Methods of Producing Elastic Adhesive Sheets."

The claims read:

"3. The method of adhering a pressure-sensitive adhesive material soluble in a solvent chosen from the group consisting of volatile hydrocarbon and halogenated hydrocarbon solvents to a self-supporting film consisting essentially of a solid ethenoid polymer which is insoluble in the solvents of said group under normal conditions, and which corresponds to the empirical formula:

$$(-CH_2-CH_2-)_x \qquad \left(-\underset{R_3}{CH}-\underset{R_2}{\overset{R_1}{C}}-\right)_y$$

where $R_1$ is hydrogen or an alkyl group; and $R_2$ and $R_3$ are monovalent radicals falling within the group hydrogen, alkyl, phenyl, substituted phenyl, vinyl, substituted vinyl; and the ratio $x{:}y$ exceeds $1{:}5$; comprising applying said pressure-sensitive adhesive material to said film in a solvent of the said group and subjecting the applied

solvent-carried adhesive and film to a temperature above the threshold of solubility of the ethenoid polymer in the chosen solvent but below the melting point thereof and driving off said solvent.

"5. The method as claimed in claim 3, wherein the ethenoid polymer is molecularly oriented and the temperature to which the applied solvent-carried adhesive and film are subjected does not exceed 170° F.

"6. The method as claimed in claim 5, wherein the ethenoid polymer is polyethylene and the pressure-sensitive adhesive material comprises polybutene."

It is noted that claim 6 is dependent on claim 5, which in turn is dependent on claim 3.

Claim 3 is not happily phrased. This fact is recognized in the brief for appellant which states, *inter alia:*

"In the claims the ethenoid polymer is defined by a complicated chemical structure to cover other ethenoid polymers besides the species polyethylene. However, for the purposes of this appeal all the claims may be considered as if they were directed to polyethylene alone, since the Patent Office has raised no question of the propriety of the broader definition, and if the claim is allowable for polyethylene, it is allowable in the broader form."

The brief then sets forth a form of claim with the statement that for the purpose of this appeal claim 3 may be read as though it followed such form.

Appellant's suggestion that if the claim is allowable for polyethylene it is allowable in the broader form does not impress us as logical. So far as this case is concerned, it is conceded that if claim 3 be found allowable, claims 5 and 6 are allowable, but it is not true that patentability of the broad claim would necessarily follow from a finding of patentable matter in the specific claims.

So far as the form of the claim is concerned, we must consider what the board had before it. However, inasmuch as the form indicates the interpretation which appellant himself placed upon claim 3, we here reproduce it:

"The method of adhering a pressure-sensitive adhesive material soluble in a solvent chosen from the group consisting of volatile hydrocarbon and halogenated hydrocarbon solvents to a self-supporting film consisting essentially [of polyethylene] which is insoluble in the solvents of said group under normal conditions; comprising applying * * * said pressure-sensitive adhesive material to said film in a solvent of the said group and subjecting the applied solvent-carried adhesive and film to a temperature above the threshold of solubility of the [polyethylene] in the chosen solvent but below the melting point thereof and driving off said solvent."

The Primary Examiner rejected the claims on three distinct and separate grounds, to wit:

(1) As unpatentable over patent No. 2,395,419, issued to James A. Mitchell February 26, 1946;

(2) As unpatentable over patent No. 2,429,861, issued to Richard G. Woodbridge III October 28, 1947;

(3) As unpatentable, in view of the Woodbridge patent, over patent No. 2,462,977, issued to Kitchen & Dyke as joint inventors, March 1, 1949.

The Board of Appeals of the Patent Office disagreed as to both the second and third grounds, saying (after some discussion of the two patents named in those grounds), "We will, therefore, not sustain the rejection of the claims on Woodbridge or on Kitchen et al. in view of Woodbridge."

By reason of the foregoing action of the board, the brief of the Solicitor for the Patent Office states:

"* * *, the sole issue before the Court is whether error was committed by the Board of Appeals in

affirming the rejection of the claims as unpatentable over Mitchell."

The board, in fact, related certain matters from the Woodbridge patent immediately following its statement that it would not sustain the Primary Examiner's rejection over the Woodbridge patent, nor that on Kitchen et al. in view of Woodbridge. The matters so related, however, do not seem to us to bring Woodbridge into the case as a reference and we do not further consider the Woodbridge patent.

As we understand claim 3, it is required that there be to begin with a basic physical element, or backing material with a pressure-sensitive adhesive material affixed thereon in which there is formed a composition which constitutes what, in the claim, is called a "self-supporting film," or a "solid ethenoid polymer."

Another requirement is that the "pressure-sensitive adhesive material" be soluble in a solvent and that the "self-supporting film" be insoluble in such solvent under normal conditions. The solvent itself is required to be one "chosen from the group of volatile hydrocarbons and halogenated hydrocarbon solvents." The Primary Examiner construed "normally insoluble" as meaning "insoluble at ordinary room temperature," and this construction apparently conforms to appellant's specification. In claim 6, the "self-supporting film" required by claim 3 is stated to be polyethylene, and the "pressure-sensitive adhesive," also required by claim 3, is stated to comprise polybutene. No specifically named solvent is mentioned in any one of the claims, but toluene is specifically named in an example given in appellant's specification and that, we understand from the record and argument, is the particular solvent used by appellant.

The foregoing constitutes the materials upon which appellant's method operates.

The method itself—the subject matter for which the patent is sought—comprises three procedural steps, viz., (a) applying (the claim uses the term "adhering") the "pressure-sensitive adhesive material" [polybutene specific to claim 6] to the "self-supporting film" [polyethylene specific to claim 6]; (b) subjecting the film with the adhesive firmly fixed upon it to a temperature which, as limited in claim 5 does not exceed 170° F., but which is broadly defined in claim 3 as "a temperature above the threshold of solubility of the ethenoid polymer in the chosen solvent but below the melting point thereof;" and, (c) driving off said solvent.

In the specification of appellant's application it is said:

"* * * For the purposes of this invention temperature threshold of solubility is defined as that temperature at which the solubility of the ethenoid polymer is .1% by weight in the particular solvent chosen."

The specification teaches that the pressure-sensitive adhesive is "firmly affixed to the backing element with sufficient tenacity to permit the tape to be handled in roll or sheet form in the same manner as any ordinary industrial or surgical pressure-sensitive adhesive tape." The function of the temperature range defined in the second step seems, from the specification, to be that of producing an "interface" between the backing and the pressure-sensitive adhesive which forms a coating for the backing by causing the hydrocarbon solvent to attack and interact with the base so that there is produced a mutual dissolution of the adhesive and the backing before the solvent is driven off the composition. As stated in substance in the brief of the Solicitor for the Patent Office, claim 3 does not recite any numerical value of any temperature. The range is defined only as being "above the threshold of solubility of the ethenoid polymer but below the melting point thereof," meaning, as we understand it, that the range begins at the point where the temperature is just sufficient to render the ethenoid polymer soluble enough to be "sticky" but not sufficient to melt it.

Driving the solvent off the composition, which apparently is effected by the higher range of heat, dries the moisture from the composition and the finished product, stated in the title of the application to be "Elastic Adhesive Sheets," results.

Hereinbefore, a form of claim suggested in the brief for appellant has been quoted because it was regarded by us as appellant's interpretation of claim 3. That suggested form, in effect, limited the self-supporting film to polyethylene which is not named in claim 3, but is named in claim 6.

The brief of the Solicitor for the Patent Office points out that:

"* * * If the base material be considered to be polyethylene as appellant suggests, then patentable novelty in the claim is predicated primarily *upon the temperature range defined,* to produce the mutual dissolution of adhesive and base material, called the interface by appellant." (Italics supplied by us.)

As we understand the foregoing, it means that the *matter of temperature* is the predominant factor respecting the here alleged invention. That seems to us to be correct.

The first paragraph of the Mitchell patent states:

"This invention relates to the manufacture of pressure-sensitive sheets or tapes. It relates more specifically to the use of a coating on the back side of the sheet or tape to reduce the adhesion of the tacky coating thereto when the product is formed into a roll package or into stacks."

We quote from the decision of the board all that is there said concerning the Mitchell patent:

"The patent to Mitchell discloses the production of pressure-sensitive adhesive to various backings, the specific examples being backings of regenerated cellulose, cellulose acetate and polyvinyl alcohol. The pressure-sensitive adhesive material is of the same nature as that applied by appellant to his backing. The solvent of the specific examples is toluene, which is a hydrocarbon. The coating is dried with air at 100° C. It is stated in this patent that the backing material may be other than those of the specific examples, among these others being mentioned polyethylene.

\*      \*      \*      \*      \*      \*

"As to the patent to Mitchell, we consider that this patent discloses the application of pressure-sensitive adhesive to a self-supporting solid polyethylene polymer film. Appellant discloses that the melting points of his polyethylene polymers are greater than 212° F. and preferably range between 212° F. to 350° F. It seems to us that the claimed method of adhering pressure-sensitive adhesive to a support is not patentably different from that disclosed in the Mitchell patent. Since Mitchell clearly uses a solvent solution of pressure-sensitive adhesive and dries in air at 100° C. when using toluene as a solvent, it seems clear that he uses a temperature of 100° C. or less when applying the coating solution onto the support and if the same temperature is used when polyethylene polymer constitutes the support, the claims are met. The temperature of 100° C. meets the terms of the temperature definition of claims 3 and we do not consider the specific temperature of claims 5 and 6 to constitute a patentable differentiation thereover. From the Mitchell patent it seems obvious not to use a temperature that approaches or is too near the melting point of the supporting film as such higher temperatures would obviously distort the film and give an undesired product. The treating temperature is obviously dependent on the specific solvent used and the melting point of the particular polyethylene polymer used as the supporting film. We consider that the

optimum temperature to be used is within the purview of the man skilled in the art. In view of the foregoing considerations, we will sustain the rejection of the claims on the Mitchell patent."

From the above it is obvious that the board found disclosure in the Mitchell patent of polyethylene as one, among many, of the materials which might be used in a relationship similar to the relationship in which appellant teaches it may be used.

That finding of the board is not challenged in any of the Reasons of Appeal to this court. Its correctness may be verified easily by reading the Mitchell specification.

The heart of the issue, therefore, as is stated in effect in the brief of the Solicitor for the Patent Office, relates to temperature, the question being whether the temperature claimed by appellant renders the claims patentable over the temperature disclosed in the Mitchell patent.

■ The calculations appearing in the board's decision, supra, with respect to the temperature disclosures in the Mitch-

ell patent and the comparisons of those disclosures with the relevant matter in claim 3 has been carefully studied and we are not convinced that the board erred in the finding upon the basis of which that claim was rejected.

■ We do not find, however, that the Mitchell patent discloses the use of a maximum temperature of 170° F. to which the composition of solvent-carried adhesive and film is subject. That appears to be a critical step in appellant's method. In our opinion, that is a step not obvious to those skilled in the art. Claim 6, being dependent upon claim 5, the temperature limitation of claim 5 is a part of claim 6. We are of opinion that claims 5 and 6 are allowable.

In view of our action relative to claim 3, it will be necessary to formulate proper introductory phraseology for claims 5 and 6 and the case will be remanded to the Patent Office for that purpose.

The decision of the Board of Appeals is modified, in that it is affirmed as to claim 3, and reversed as to claims 5 and 6. The case is remanded to the Patent Office for the purpose herein expressed.

Modified and remanded.